UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| ELBERT E. POLLARD, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 16-103-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Elbert E. Pollard and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 19 and 22] Pollard contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for disability income benefits ("DIB") and supplemental security income ("SSI"). [Record No. 19-1] He requests that the Court direct a finding of disability or, alternatively, remand the matter for further administrative proceedings. [Record No. 19-1, p. 15] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Pollard.

## I.     Procedural History

On December 12, 2012, Pollard filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act.[1] [Administrative Transcript, hereafter, "Tr.," 59] Pollard alleged that his disability began December 6, 2012. *Id.* The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. *Id.* Pollard requested and was granted an administrative hearing before ALJ Robert Bowling, who issued a written decision denying benefits on February 6, 2015. [Tr. 59–70] Pollard then sought review by the Appeals Council but that request was denied. [Tr. 1]. He has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Background

Pollard was 48 years-old at the time of the ALJ's decision. [*See* Tr. 69–70] He has a high school education and has received vocational training in automobile body work. [Tr. 82] Over the past fifteen years, Pollard operated a bulldozer for a coal company. [Tr. 83] He injured his low back at work during 2005 and was off work for some time due to the injury. [Tr. 898] Pollard stopped working completely in 2011. [Tr. 83] At the time of administrative hearing, he had a driver's license and drove approximately once per week. [Tr. 81–82]

---

[1] Pollard previously filed for DIB and SSI benefits on August 25, 2011. These applications were denied by an ALJ on December 5, 2012. [Tr. 151–66]

Pollard testified that he is unable to work due to low back pain and numbness, which travels to his legs and feet. [Tr. 86, 97] He also complained of numbness in his hands and problems sleeping. [Tr. 88] Pollard contends that, with respect to his back, he had not undergone surgery but he would like to. [Tr. 89–90] He had recently begun receiving steroid injections as conservative treatment and had also received chiropractic treatment. [Tr. 90–91] Additionally, Pollard had started to walk with a cane, which had been prescribed by his nurse practitioner. [Tr. 92] He also reported being treated for depression. [Tr. 86–89]

Pollard reported being five feet, eight inches tall and weighing 215 pounds. [Tr. 80] He testified being able to sit and stand for approximately 30 minutes and having the ability to walk 100 yards. [Tr. 100] While Pollard did have some trouble lifting, he believed he could lifts items weighing as much as a case of soft drinks. *Id.* He felt that he could kneel and crouch a little, but that he could not bend, stoop, or crawl. [Tr. 100–01] Additionally, the claimant felt that his depression interfered with his ability to maintain attention and to understand. [Tr. 101]

Nathan Polley, M.D., conducted a consultative examination on March 2, 2013. [Tr. 709] At that time, Pollard complained of back and leg pain and reported having been treated only with Flexeril. [Tr. 709–10] Dr. Polley noted that Pollard's lumbar range of motion was decreased, with flexion limited to sixty degrees and lateral bending of ten degrees bilaterally. [Tr. 710] His lower extremity strength was five out five, however, with the exception of his left dorsiflexors, which were four out of five. Deep tendon

reflexes were normal and sensation to light touch was intact. [Tr. 711] According to Dr. Polley, the claimant was walking with a limp and using a crutch. *Id.*

Dr. Polley suspected that Pollard had left-side nerve root impingement in his low back, but he had no MRI study to assist him in confirming the diagnosis. *Id.* Further, at that time, Pollard had not received any conservative treatment to address his symptoms. *Id.* Accordingly, Polley recommended that Pollard be referred for further diagnostic testing of his low back. [Tr. 712] Additionally, he opined that Pollard had moderate disability in performing "manual labor jobs," and "even some moderate duty jobs." He believed that Pollard would not be limited, however, in performing light duty work for an eight-hour workday. *Id.*

Later that month, Pollard received an audiological evaluation. [Tr. 825] Pollard reported to the audiologist performing the evaluation that he was having trouble hearing television, as well as in crowds. *Id.* Audiometric results revealed a moderate to severe hearing loss, and the audiologist recommended two hearing aids. *Id.*

On July 1, 2013, Brittainy Shaw, M.S., performed a consultative examination concerning Pollard's mental limitations. [Tr. 752] Pollard reported that he had been diagnosed with depression and was being treated with Seroquel and Citalopram. [Tr. 753] He also had been seeing a therapist for six months. *Id.* Pollard advised Shaw that he was unable to manage bills or go shopping. *Id.* Shaw observed that Pollard's recall, memory, attention, and concentration were normal. *Id.* Although he reported feelings of sadness, low energy and crying spells, Pollard denied any history of depression prior to leaving his job. [Tr. 754] Shaw further determined that Pollard's reasoning was concrete, his decision-

making was normal, and his judgment was good. *Id.* He did have limitations in the areas of coping and intellect/education. *Id.*

Shaw administered the WAIS-IV, an instrument which assesses intelligence, and found Pollard to have a Full Scale IQ ("FSIQ") of 68, which falls within the mild range of mental retardation. *Id.* She noted, however, that a significant discrepancy between his processing speed score and his verbal comprehension score and, thus, his FSIQ might not be an accurate representation of his intellectual functioning. *Id.* According to Shaw, Pollard's FSIQ score warranted a diagnosis of borderline intellectual functioning rather than mild mental retardation. *Id.* Ultimately, Shaw indicated that Pollard's ability to understand, remember, sustain attention, and carry out instructions toward the performance of simple, repetitive tasks was affected only slightly. Further, she believed that his capacity to respond appropriately to supervision, co-workers, and work pressures in a work setting was not affected. *Id.*

Pollard was examined by James Owen, M.D., later in July 2013 in connection with a workers' compensation claim. [Tr. 898] Pollard reported that he injured his back at work in December 2009 and that an MRI performed shortly thereafter revealed that he had a pinched nerve. *Id.* The claimant was referred to a neurosurgeon at the University of Kentucky Medical Center, but surgery was not planned. *Id.* Pollard eventually returned to work, but was forced to quit in 2011 when he reinjured his back. *Id.* At the time of Dr. Owen's evaluation, Pollard reported constant pain in his low back, which was worse with any type of activity. *Id.* Pollard also reported experiencing intermittent pain and paresthesia down his left leg and foot, and required a cane when walking. *Id.*

Dr. Owen reviewed Pollard's MRI report from April 9, 2013, which confirmed that claimant had a moderate circumferential disc bulge at L4–L5 with central penetration; moderate to marked spinal stenosis; and degenerative changes throughout the lumbar spine. [Tr. 899] Upon observation, Dr. Owen noted that Pollard kept his weight off his left leg and that he walked anteriorly tipped, "as one does with spinal stenosis." [Tr. 900] Ultimately, Dr. Owen concluded that Pollard was not capable of returning to his previous work and that he was "disabled for gainful employment." [Tr. 901]

Pollard's file was reviewed by state agency consultants Ilze Sillers, Ph.D., and Subhideb Mukherjee, M.D., in July 2013. [Tr. 207–11] Dr. Mukherjee found Pollard's statements regarding his symptoms partially credible based on the available medical evidence. [Tr. 208] Mukherjee believed that Pollard would be able to occasionally lift 20 pounds; frequently lift 10 pounds; stand, sit, or walk about six hours in an eight-hour workday; and that he had the unlimited ability to push and/or pull. [Tr. 209] Additionally, he concluded that Pollard was capable of climbing ramps or stairs, stooping, kneeling, crouching, and crawling occasionally; balancing frequently; but that he could never climb ladders, ropes, or scaffolds. [Record No. 210]. Pollard was also to avoid all concentrated exposure to vibration and to hazards such as heights and machinery. *Id.*

On October 17, 2014, Jane Bowen, A.R.N.P, submitted a mental residual functional capacity ("RFC") questionnaire on Pollard's behalf. [Tr. 904] Ms. Bowen did not indicate how long she had treated Pollard, but reported that she saw him once every three months, and more often if needed. *Id.* Bowen described Pollard's symptoms as anhedonia, hopelessness, and low motivation. She stated that, over the year, his highest Global

Assessment of Functioning Score was 65. Bowen further indicated that Pollard would be fairly limited in all areas of mental functioning related to his ability to work and that he would likely be absent from work more than three days per week. [Tr. 905–06] However, she failed to relate her opinions to any particular clinical findings. [*See* Tr. 906]

The ALJ determined that Pollard had the following severe impairments: disorders of the spine; borderline intellectual functioning; affective disorders; and hearing loss not treated with cochlear implants. [Tr. 61] He further determined, however, that Pollard did not have an impairment or combination of impairments that met or medically equaled a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 62] After considering the record, the ALJ concluded that Pollard had the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Tr. 64] Specifically, the ALJ determined that

> [Pollard] can stand and walk for only six hours total in an eight-hour workday. The claimant can sit for only six hours total in an eight-hour workday and would require a sit or stand option on a 30-minute basis. The claimant can never climb ladders, ropes and scaffolds; claimant can only occasionally climb ramps and stairs. He can only occasionally stoop, kneel, crouch, and crawl; claimant can only frequently balance. The claimant should avoid concentrated exposure to vibration and should avoid all exposure to unprotected heights, the use of moving machinery, and noisy or loud work environments. Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and with few, if any work place changes. The claimant should have only occasional interaction with the general public, and only occasional interaction with co-workers and only occasional supervision.

[Tr. 64]

The ALJ determined that, because there were jobs existing in significant numbers in the national economy that Pollard could perform, he had not been under a disability from the alleged onset date through the date of the ALJ's decision. [Tr. 69–70]

### III.  Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on

medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Analysis

#### A. Substantial Evidence Supports the ALJ's Credibility Determination.

"[P]ain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). However, the

ALJ must assess whether there is objective evidence of an underlying medical condition supporting a claim of disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994) (*citing Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If there is, the ALJ must evaluate "whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* at 853.

Here, the ALJ determined that Pollard's medically determinable impairments could reasonably cause the alleged symptoms, but found that the record did not support the degree of pain severity that Pollard described. [Tr. 65] The ALJ explained his reasoning for this determination. For instance, Pollard testified that he is able to do most activities of daily living without limitation. *Id.* He drives, goes shopping, and attends church. [Tr. 63] Pollard described an average day as being picked-up by his friend and being driven to a store. [Tr. 101] Pollard had recently started receiving steroid injections in his low back and had also had chiropractic treatment, which improved his symptoms. [Tr. 90–91] Further, the ALJ believed that Pollard's subjective presentation was exaggerated in light of the evidence of record. *See Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003) (deference is given to the ALJ, who has the opportunity to observe the witness's demeanor while testifying.).

The ALJ is required to compare the claimant's subjective reports of pain to the objective medical evidence based on consideration of the entire case record. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 711 (6th Cir. 2012). In this case, there is no suggestion

that the ALJ failed to consider all the medical evidence of record, including that of the claimant's treating sources who did not provide an opinion. [*See* Tr. 65–66.] In his memorandum in support of summary judgment, Pollard cites treatment notes from his primary care physician which were rendered after the ALJ issued his decision (February 6, 2015). [Record No. 19–1, pp. 3–5] A court cannot consider such belated submissions when reviewing an ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). While a reviewing court may direct the Commissioner to consider new evidence on remand in certain circumstances, the claimant has not argued that this is "new and material" evidence or that sentence six remand is otherwise appropriate. *See id.*

Credibility determinations rest with the ALJ and are entitled to significant deference. *See, e.g., Jones*, 336 F.3d at 476. *See also Rogers v. Comm'r v. Soc. Sec.*, 486 F.3d 234, 247 (2007). Of course, such determinations must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249. In this case, they are. The ALJ explained that, for the reasons stated above, the objective evidence did not fully support Pollard's allegations of pain. While low back and leg pain may have prevented him from performing his previous employment operating a bulldozer, his own testimony regarding his daily activities—combined with the ALJ's observations—support the ALJ's conclusions that the subjective report of pain was overstated.

### B.   Substantial Evidence Supports the ALJ's Decision.

The claimant contends that the "vocational expert evidence proves that [he] is entitled to [benefits]." [Record No. 19–1, p. 14] Although counsel for the claimant has failed to develop this argument in any meaningful way, he apparently argues that the

hypothetical question presented to the vocational expert during the claimant's administrative hearing, and later adopted in the ALJ's decision, was not supported by substantial evidence. Because this issue is indistinguishable from the claimant's separate "substantial evidence" argument, the two claims will be addressed together.

On December 5, 2012, ALJ Jonathan Stanley determined that Pollard had the RFC to perform light work, except he could only occasionally climb stairs and ramps; could never climbs ropes, ladders, or scaffolds; could frequently balance; could occasionally stoop, kneel, crouch, and crawl; was required to avoid concentrated exposure to vibration and could not work at unprotected heights or around hazardous moving machinery. [Tr. 157] On February 6, 2015, ALJ Bowling adopted this RFC, but added new limitations including a sit-stand option, as well as mental limitations to account for Pollard's affective disorder. [Tr. 64]

The plaintiff has failed to point to specific evidence that shows the ALJ's decision is not supported by substantial evidence. Based on an independent review of the record, the Court determines that substantial evidence does support the ALJ's decision. As an initial matter, it appears that no treating physician provided an opinion regarding the plaintiff's physical residual capacity. Dr. Polley examined the claimant on behalf of the state and determined that he would not be limited with respect to performing light work. [Tr. 712] The RFC and, thus, the ALJ's decision, is consistent with Mr. Mukherjee's opinion, who opined that Pollard could stand, sit, and walk six hours in an eight-hour workday. [Tr. 207-11] Dr. Owen examined Pollard regarding a worker's compensation claim, but the only opinions he offered were that Pollard could not return to his previous

work and that he was "disabled for gainful employment." [Tr. 901] The ultimate of determination, however, is a matter reserved to the Commissioner. *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008). It is clear that the ALJ gave consideration to the claimant's subjective complaints of pain, as he included a sit-stand option in the RFC, which was not required under these physicians' opinions.

The claimant's brief in support of summary judgment includes an excerpt from a "Physical Capacities Evaluation" submitted by Kristi Lovelace, A.R.N.P. [Record No. 19–1, Tr. 929] Ms. Lovelace's one-page report (dated November 20, 2014) indicates that she had been seeing the claimant for approximately two months for chronic low back pain. [Tr. 929] Lovelace stated that Pollard would only be able to stand and sit for one hour in an eight-hour workday, but declined to comment on how many hours he could work per day or how many days per month he would be expected to miss work.[2] *Id.*

It is unclear whether the ALJ considered Ms. Lovelace's report, but any failure to do so constitutes harmless error because the report is patently deficient. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). Lovelace failed to provide crucial details regarding her treatment relationship with Pollard, including the manner and frequency of treatment. Fatally, she provided no basis for her opinions and cited no objective information in support. *See, e.g., Hyde v. Barnhart*, 375 F. Supp. 2d 568, 575

---

[2] The evaluation is not a narrative report. Rather, Lovelace circled her answers from an array of set choices. [Tr. 929] It does have a space for comments, however, in which Lovelace provided: "disability status to be determined by neurosurgeon at his appt. on 12/2/14."

(E.D. Mich. 2005). Additionally, Ms. Lovelace is a nurse practitioner rather than a physician, so her opinion is not entitled to controlling weight. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d at 541 (nurse practitioner is "other source" and, therefore, "treating physician rule" does not apply). Ultimately, the Commissioner could not possibly credit Lovelace's opinion. *See Blakley*, 581 F.3d at 409.

## V.

As outlined above, substantial evidence supports the ALJ's credibility determination and conclusion that Pollard is not disabled under the Act. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 22] is **GRANTED**.

2. Plaintiff Elbert E. Pollard's Motion for Summary Judgment [Record No. 19] is **DENIED.**

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 20th day of March, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge